## AFFIDAVIT

I, Jesse Dambrackas, being duly sworn, depose and state as follows:

1.       I am a Detective Trooper with the Vermont State Police currently assigned to the Vermont Drug Task Force. I have been a Trooper with the Vermont State Police (VSP) since May of 2014 and have been assigned to the Vermont Drug Task Force (VDTF) since June of 2019. Currently I am responsible for working cases involving a variety of criminal violations, including narcotics related violent crime and narcotics offenses. In September of 2019, I completed a 45-hour intensive drug task force detective training course hosted by the Massachusetts State Police. The training course focused specifically on utilizing confidential informants, covert surveillance tactics, undercover law enforcement officer operations, search warrant preparation and execution, and education on the prosecution of drug related crimes.

2.       During my career, I have been involved in numerous cases which resulted in the arrests and convictions for possession and sale of regulated drugs. During my current assignment, I have received extensive field training by members and supervisors of the VDTF relative to drug investigations. I have participated in numerous drug sales investigations. I have participated in the execution of numerous search warrants that have resulted in seizures of evidence of drug trafficking and regulated drugs.

3.       I submit this affidavit to establish probable cause to believe that on May 15, 2023, May 16, 2023, June 12, 2023, and June 14, 2023, Bradley SALDI violated 21 U.S.C. § 841(a)(1), by distributing controlled substances, namely cocaine base and fentanyl, within the District of Vermont.

1

4.     This affidavit is based upon my training and experience, and my direct involvement in this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact learned by law enforcement during the course of the investigation. Where I describe a statement, it is described in substance, not verbatim.

5.     Between December 2022 and June 2023, with the assistance of a confidential informant,[1] the VDTF and FBI conducted approximately twenty-four controlled purchases of cocaine base and/or fentanyl from several individuals, including but not limited to Bradley SALDI, in different rooms at the Highlander Motel, 203 N. Main Street, Rutland, Vermont.

6.     On or about May 12, 2023, the CI told law enforcement that Brad SALDI was recently hired as a handyman by the motel owner and was living in and distributing controlled substances from room 18 at the Highlander Motel ("room 18"). The VDTF is familiar with SALDI, who is known for his involvement in the use and distribution of controlled substances in the Rutland area.

---

[1] CI is a registered confidential informant with the Vermont State Police/Vermont Drug Task Force. CI is being paid for CI's cooperation with law enforcement. CI has admitted to using controlled substances in the past. CI has a criminal history in Vermont that includes felony convictions for Embezzlement (1999), Sexual Assault – Victim > 16 years (1999), and False Pretenses or False Tokens < $25 (1994). CI also has misdemeanor convictions for Alcohol – Minor in Possession, and Unlawful Mischief, both from over 20 years ago. CI has criminal histories in other states to include larceny convictions and burglary convictions from over 20 years ago as well as a violation in New York State from 2021 for possession-controlled substance in non-original container. CI has provided law enforcement with credible information regarding the local drug trade which the VDTF and FBI was able to verify as true. CI has conducted purchases of controlled substances in the past while working as a confidential informant for other law enforcement agencies. The agency that the CI most recently cooperated with advised the VDTF that CI's cooperation resulted in arrests and convictions of narcotics law violations. CI has conducted more than 15 purchases of controlled substances since CI's cooperation with the VDTF began.

2

### May 15, 2023, Controlled Purchase

7.      On or about May 15, 2023, I met with CI to coordinate a controlled purchase from SALDI in room 18. I showed the CI an unmarked law enforcement photograph of SALDI, and CI advised that the person in the photo was the same Brad SALDI it could purchase cocaine base and/or heroin/fentanyl from at the Highlander Motel.

8.      Prior to the controlled purchase, I searched CI's person. No drugs, money, or contraband were found. CI was provided with $110.00 of pre-recorded VDTF funds to purchase a "fifty piece"[2] and a bundle of fentanyl/heroin.[3] CI was equipped with electronic audio/video recording/transmitting equipment.

9.      Physical and electronic surveillance of the CI was maintained by me and/or other investigators participating in the Controlled Purchase operation, including Det. Sgt. Jason Johnson and Det. Sgt. Jeffrey Stephenson.

10.     Upon the CI's arrival at the Highlander Motel, it was approached by the motel owner/operator Siddik Khalifa in the parking lot of the motel. CI had a brief conversation with Khalifa but didn't have any physical contact with him.

---

[2] Based upon my training and experience, I know the term, "fifty piece" refers to $50.00 worth of cocaine base.
[3] Based upon my training and experience, I know the term, "bun" referrers to an amount of heroin/fentanyl, generally packaged into a "bundle" of ten individual bags. However, the same amount of heroin/fentanyl is commonly distributed within a single package and also referred to as a "bun" or "bundle."

3

11.     At the conclusion of the conversation with Khalifa, detectives monitored the live video transmission as CI approached room 18 and knocked on the door. CI entered room 18 where SALDI could be seen via the live streaming video wearing a red shirt. An unknown female, and a male known to the VDTF were also inside the room. CI was heard asking SALDI, "can you do a 50 of up?"[4] SALDI replied, "yup." CI then added, "and a bun" to which SALDI again replied, "yup." CI can then be heard confirming with SALDI that it will be "60 and 50" referring to the $60.00 for the heroin/fentanyl and $50.00 for the cocaine base. CI later reported that it handed SALDI the $110.00 and SALDI handed CI the "fifty piece" of cocaine base and a small piece of scrap paper to package the cocaine base. Det. Sgt. Stephenson identified SALDI in the red shirt from the covert video recording. Det. Sgt. Stephenson is familiar with SALDI's appearance from prior law enforcement contacts.

12.     SALDI advised CI that he would be "two seconds." SALDI then exited room 18 and went into room 21 where other subjects known to law enforcement were reportedly staying.  The known male who was in room 18 was seen on the covert recording leaving SALDI's room. A few minutes later SALDI exited room 21 and can be heard telling CI to shut his door as they went back into room 18 together. CI can be heard saying "thank you" and SALDI replied "you're welcome." CI then exited room 18, and I maintained physical and electronic surveillance of the CI as it walked through

---

[4] Based on my training and experience, I know the term "up" to be slang for cocaine or cocaine base.

4

the parking lot and off the property until it met with me at a predetermined meeting location.

13. Upon meeting the CI, I seized an amount of cocaine base and fentanyl the CI had just purchased from SALDI. The bundle of fentanyl/heroin was packaged in bulk and contained inside a piece of magazine paper.

14. CI was searched immediately following the controlled purchase. No contraband, money, or controlled substances were located.

15. CI provided a sworn audio recorded statement. CI reported that it knocked on the door to room 18 and was let inside by SALDI. CI reported that it provided SALDI with the $110.00 and advised him what it wanted. CI advised it was accurate that SALDI provided it with the cocaine base and SALDI advised CI that he had to obtain the fentanyl/heroin from a different room. SALDI then went into room 21 by himself. CI advised it was accurate that when SALDI came back out of room 21 he provided it with a package containing the fentanyl/heroin. CI reported meeting back up with detectives and turning over all of the cocaine base and heroin/fentanyl it purchased from SALDI.

16. I weighed, photographed, and field tested the cocaine base and fentanyl/heroin purchased from SALDI. The cocaine base weighed approximately 1 gram with packaging and a field test resulted in a presumptive positive for the presence of cocaine base. The fentanyl/heroin was field tested resulting in a presumptive positive for the presence of fentanyl.

17.     The fentanyl/heroin and cocaine base were sealed in separate evidence bags and secured in an evidence locker at the State Police Barracks in Rutland, pending delivery to the Vermont Forensic Laboratory for analysis and storage.

### May 16, 2023, Controlled Purchase

18.     On or about May 16, 2023, the VDTF coordinated a second controlled purchase from SALDI. With respect to this investigation the VDTF was assisted by the same confidential informant noted above.

19.     CI advised me that it had seen SALDI earlier on May 16,2023, and he advised that CI could come and see him when it was ready to buy cocaine base. Prior to this controlled purchase, I searched CI's person, and no drugs or contraband were found. CI had some personal money on its person that remained with me for the duration of the controlled purchase.

20.     CI was provided $100.00 of pre-recorded VDTF funds to purchase $100.00 worth of cocaine base from SALDI. CI was equipped with electronic audio/video recording/transmitting equipment.

21.     I dropped CI off near the Highlander Motel and maintained physical and electronic surveillance of CI. Other investigators participating in the Controlled Purchase operation, including Det. Sgt. Jeffrey Stephenson and Det. Sgt. Jason Johnson, also maintained electronic and/or physical surveillance of CI.

22.     Upon the CI's arrival at the Highlander Motel, a female approached it and asked CI to borrow a lighter. CI took the lighter it had out of its pocket and dropped it on the ground. I learned later that CI did this intentionally so the female could pick it

6

up and they would not have physical contact. CI continued to the room 18 while detectives monitored the live audio/video transmission. When CI entered room 18, SALDI was heard asking CI, "did you get the money?" CI replied that it did. SALDI can clearly be identified in the covert video recording lying on the bed with a scale on his chest as he weighed out and bagged the $100.00 worth of cocaine base for CI. CI can be heard saying "thank you," as it left room 18.

23. I maintained physical and electronic surveillance of CI as it walked through the parking lot and off the property until it met with me at our predetermined meeting location.

24. Upon meeting CI, I seized an amount of cocaine base CI had just purchased from SALDI. Immediately following the controlled purchase, the CI was searched by me. No contraband, money, or controlled substances were located. The personal money found on CI during the initial search was returned to CI.

25. CI provided a sworn audio recorded statement and reported that it went into room 18 where SALDI was lying on the bed wearing a red t-shirt. CI said SALDI took cocaine base from a larger bag, weighed out $100.00 worth on a scale, and then bagged the cocaine base for CI. CI said it gave SALDI the money in exchange for SALDI providing the cocaine base. CI reported that it then left room 18 and walked to meet with me, where it turned over the cocaine base it had just purchased from SALDI.

26. I weighed, photographed, and field tested the cocaine base purchased from SALDI. The cocaine base weighed approximately 1.2 grams with packaging and a field test resulted in a presumptive positive for the presence of cocaine base.

27. The cocaine base was sealed in an evidence bag and secured in an evidence locker at the State Police Barracks in Rutland, pending delivery to the Vermont Forensic Laboratory for analysis and storage.

### June 12, 2023, Controlled Purchase

28. On or about June 12, 2023, the VDTF coordinated a third controlled purchase from SALDI. With respect to this investigation the VDTF was assisted by the same confidential informant noted above.

29. CI advised me that it had seen SALDI earlier on June 12, 2023, and SALDI advised it could come and see him when it was ready to buy cocaine base. Prior to this controlled purchase, I conducted a search of the CI's person, and no drugs or contraband were found. CI had some personal money on its person which remained with me for the duration of the controlled purchase.

30. CI was provided with $100.00 of pre-recorded VDTF funds to purchase $100.00 worth of cocaine base from SALDI, and CI was equipped with electronic audio/video recording/transmitting equipment.

31. I dropped CI off near the Highlander Motel and watched as it walked to the parking lot of the Highlander Motel. Physical and/or electronic surveillance of CI was also maintained by other investigators participating in the controlled purchase operation, including Det. Sgt. Jason Johnson, Det. Sgt. Jeffrey Stephenson, Det. Cory Kingston, and FBI SA Andrew Kirwan.

32. Upon CI's arrival at the Highlander Motel, CI spoke with some people who were in the parking lot, and CI then went into room 18 where it waited with

8

another female that the CI later identified to law enforcement. A short time later, SALDI could be seen on the video surveillance by Det. Sgt. Stephenson entering room 18. While monitoring the covert electronic surveillance equipment, I could hear SALDI tell CI that the money the CI provided to buy the $100.00 worth of cocaine base was the last bit he needed to "re-up."[5] SALDI advised CI he would be gone for a few minutes as he would be getting his "re-up" right down the road.

33. Moments later a pick-up truck with a ladder rack pulled up from the lower parking lot to the upper lot and stopped near the main office of the motel. I observed SALDI exit the front passenger seat of the truck and enter the Highlander Motel's office. Det. Sgt. Stephenson advised he could see that SALDI had cash in his hand when he entered the office. SALDI left the office shortly after and Det. Sgt. Stephenson advised he could see a male that appeared to be the motel owner, Siddik Khalifa, in the doorway of the office, but the view of his face was obstructed. SALDI got back into the passenger seat of the same truck and the truck left the property traveling southbound on Main Street.

34. Det. Sgt. Johnson and Det. Kingston were in a vehicle together and assisted with mobile surveillance of the truck SALDI was in. FBI SA Kirwan was in his own vehicle assisting with mobile surveillance of the truck. Detectives Johnson and Kingston and SA Kirwan followed the truck and maintained surveillance of it as it drove to a residence on Chestnut Avenue in Rutland City. SA Kirwan observed SALDI

---

[5] Based on my training and experience, I know the term "reup" to be slang to describe purchasing/obtaining a new supply of drugs for distribution.

9

and the unidentified male driver exit the truck, walk onto the porch, and knock on the door. It did not appear that anyone answered the door. SALDI and the other male got back into the truck and then drove to a residence at 85 Park Avenue in Rutland City where the truck parked out front. 85 Park Avenue is a multi-unit apartment building and a location known by the VDTF. At least one apartment at this address has been involved in other narcotics investigations involving controlled purchases of controlled substances. An unidentified female and unidentified male were seen getting into the truck briefly and then getting back out. Another unidentified male approached the front passenger side of the truck and spoke with the occupants through the window.

35. During the period SALDI and the other male had left the Highlander Motel, electronic and physical surveillance of CI was maintained by me and Det. Sgt Stephenson. CI was waiting inside room 18 during most of this time and came into the parking lot for some portion of the time. A male who is known to the VDTF from prior law enforcement interactions entered room 18 with CI and the previously described female occupant.

36. As Detectives Johnson and Kingston and SA Kirwan continued surveillance on Park Avenue, the truck eventually departed and began traveling back towards the Highlander Motel. Physical surveillance of the truck was lost for a short period of time during its return to the Highlander Motel, but it arrived in a time frame consistent with traveling straight back to the motel from Park Avenue. Around the time that SALDI returned to the Highlander Motel, CI had left room 18 and was waiting outside of the motel on the sidewalk near Main Street. Det. Sgt. Stephenson and I had

maintained physical and/or electronic surveillance of CI while CI waited for SALDI to return with the cocaine base. When CI saw the truck pulling back into the motel parking lot it walked back down to the lower parking lot where it met with SALDI. I saw the truck as it approached the motel and was able to identify SALDI as the front seat passenger. CI met briefly with SALDI who provided CI with a cellophane package containing cocaine base. The exchange took place in the lower parking lot outside of room 18. CI later advised me that when it was conducting the transaction with SALDI, CI saw what it believed was at least an ounce of cocaine base in a larger package inside the truck. SALDI and the package could not be seen on the covert video recording. SALDI could be heard saying something to the effect of "come back soon," to the CI as it left.

37. I maintained physical and electronic surveillance of CI until it met with me at a predetermined meeting location. Upon meeting with the CI, it turned over an amount of cocaine base packaged in cellophane that it had just purchased from SALDI. Immediately following the controlled purchase, I conducted another search of CI, and no contraband, money, or controlled substances were located. The personal money found on CI during the initial search was returned to CI.

38. CI then provided a sworn audio recorded statement. CI stated that it went to room 18 and SALDI advised it he just needed the CI's $100.00 and he would have enough to "re-up." CI advised that SALDI told it to wait in room 18 and he would be back shortly. CI advised that SALDI returned sometime later as a passenger in a pick-up truck and provided it with cocaine base that was wrapped in a cellophane wrapper

11

from a cigarette box that had been sealed with a lighter. CI acknowledged that it then met with me and turned over the cocaine base it purchased from SALDI.

39. I weighed, photographed, and field tested the cocaine base purchased from SALDI. The cocaine base weighed approximately 0.4 grams with packaging and a field test resulted in a presumptive positive for the presence of cocaine base.

40. The cocaine base was sealed in an evidence bag and secured in an evidence locker at the State Police Barracks in Rutland, pending delivery to the Vermont Forensic Laboratory for analysis and storage.

### June 14, 2023, Controlled Purchase

41. On or about June 14, 2023, VDTF coordinated another controlled purchase from SALDI with the assistance of the same CI noted above.

42. Prior to this controlled purchase, I conducted a search of CI's person. No drugs or contraband were found. CI had some personal money on its person which remained with me for the duration of the controlled purchase.

43. CI was provided with $50.00 of pre-recorded VDTF funds to purchase $50.00 worth of cocaine base from SALDI and CI was equipped with electronic audio/video recording/transmitting equipment.

44. I dropped CI off near the Highlander Motel and watched as it walked to the parking lot of the Highlander Motel. Physical and/or electronic surveillance of CI was also maintained by other investigators participating in this controlled purchase operation, including Det. Sgt. Jason Johnson, Det. Cory Kingston, and FBI SA Kirwan.

45. Upon CI's arrival at the Highlander Motel, it approached the open door to room 18 where several people had been observed by Det. Sgt. Johnson coming and going prior to CI's arrival. CI made contact with SALDI and told SALDI it was looking for a "fifty of up." SALDI told CI to follow him and the two walked to the north end of the lower parking lot. SALDI was initially trying to get into a truck bearing Vermont registration 176A682, registered to Charles Biondi, who is known by area law enforcement as a user of controlled substances. SALDI then walked farther north and opened the rear driver's side door of a black Nissan pickup truck with a plow on it that was backed in near rooms 23 and 24 and is owned by the Highlander Motel owner Siddik Khalifa. CI later advised me that SALDI likely has access to the truck because he is the Highlander Motel "maintenance worker." SALDI opened the rear driver's side door of the Nissan truck and can be seen on the covert video recording standing with the truck's rear driver side door open with his back to the camera as he appeared to retrieve the cocaine base from the truck and hand it to CI without any packaging.

46. CI asked for packaging and SALDI directed CI to room 18 to obtain packaging for the cocaine base. CI eventually obtained packaging from a female whose identity is known to law enforcement in the lower parking lot right outside room 18.

47. CI departed a short time later and walked to a pre-determined meeting location to meet with me and Det. Kingston. Physical and electronic surveillance of CI was maintained until it met with detectives at the predetermined meeting location.

48. Upon meeting with CI, it turned over an amount of cocaine base packaged in a paper-fold that it had just purchased from SALDI. Immediately following the

controlled purchase, I conducted another search of the CI. No contraband, money, or controlled substances were located. The personal money found on the CI during the initial search was returned to it.

49. CI then provided a sworn audio recorded statement. CI stated that it went to room 18 where it told SALDI it needed a fifty of up. CI followed SALDI outside where SALDI retrieved the cocaine base from the back seat of a black Nissan pickup truck and handed the cocaine to CI. CI stated that it believes the truck belongs to the motel owner, Siddik Khalifa. CI obtained packaging from a female and then departed the motel. CI acknowledged meeting with me and turning over the cocaine base it purchased from SALDI.

50. I weighed, photographed, and field tested the cocaine base purchased from SALDI. The cocaine base weighed 0.6 grams with packaging and a field test resulted in a presumptive positive for the presence of cocaine base.

## Conclusion

51. Based on the information set forth above, I believe there is probable cause that Bradley SALDI, violated 21 U.S.C. § 841(a)(1) on May 15, 2023, by distributing cocaine base and fentanyl, and May 16, 2023, June 12, 2023, and June 14, 2023, by distributing cocaine base, all within the District of Vermont.

Respectfully submitted,

*/s/ Jesse Dambrackas*

Jesse Dambrackas

Detective Trooper, VSP – VDTF

Subscribed and sworn to in accordance with the requirements of Fed. R. Crim. P. 4.1 on this 7th day of July 2023.

_____

Hon. Kevin J. Doyle
United States Magistrate Judge